UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AVIATION WEST CHARTERS, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 18-cv-7431 ) |
| HEALTH AND WELFARE PLAN FOR EMPLOYEES OF ANJINOMOTO USA, INC., and AJINOMOTO HEALTH AND NUTRITION NORTH AMERICA, INC., | ) Judge Rebecca R. Pallmeyer ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This case arises from a June 2017 motorcycle accident near Portland, Oregon. The victim, referred to here as J.B., survived, but suffered severe injuries, including a traumatic brain injury. Several days after the accident, Plaintiff Aviation West Charters, LLC (d/b/a Angel MedFlight) ("Plaintiff" or "Aviation West") provided an air ambulance for J.B. from Oregon Health & Science University Hospital ("OHSU") in Portland, Oregon, to Craig Hospital in Englewood, Colorado, for inpatient rehabilitation. J.B.'s healthcare plan, Defendant Health and Welfare Plan for Employees of Ajinomoto USA, Inc. ("the Plan"), which is sponsored by Defendant Ajinomoto Health and Nutrition North America, Inc., pre-approved payment for the services at Craig Hospital. The Plan has not reimbursed any portion of the cost of transporting J.B., however, because the plan administrator, Cigna Health and Life Insurance Company ("Cigna" or "the Plan Administrator"), concluded that the cost was not covered by the Plan. J.B. has assigned his claim to Aviation West, which now challenges Cigna's decision pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1132. The parties have filed cross-motions for summary judgment. For the reasons stated below, the court grants Plaintiff's motion [23] and denies Defendants' motion [19], and remands the claim for further review.

## BACKGROUND

On June 23, 2017, J.B. crashed a dirt bike near Portland, Oregon and was found off the road, down an embankment. (Def.'s Stat. of Mat. Facts (hereinafter "DSF") [20] ¶ 16; Pl.'s Stat. of Undisputed Mat. Facts (hereinafter "PSF") [24] ¶ 6.) J.B. was taken by emergency responders to OHSU, where he was diagnosed with facial and cranial fractures, traumatic brain injury, thoracic spine fractures, bilateral collapsed lungs, pneumomediastinum, bilateral carotid artery dissection, and paraoesophageal hematoma. (DSF ¶ 16.) That day, J.B. received a craniectomy, a procedure in which a portion of the skull is surgically removed, to reduce brain swelling. (*Id.* ¶ 17.) J.B.'s treatment also included the placement of a tracheostomy for respiration and the placement of percutaneous endoscopic gastronomy for nourishment. (*Id.*) J.B. stabilized after several days; OHSU staff was able to stop monitoring for seizures in early July, and removed the breathing tube for the ventilator in mid-July. (*Id.* ¶ 18.)

Although J.B.'s physical condition had progressed substantially in those first weeks at OHSU, J.B. still struggled with cognitive functioning. (PSF ¶ 11.) Dr. Karen Brasel recommended that J.B. undergo inpatient rehabilitation at Craig Hospital (*id.* ¶ 12), because of its strong reputation for treating patients with severe traumatic brain injuries. (*See* AR at 292–93.) Cigna approved J.B.'s admission to Craig Hospital. (*Id.* at 638.)

J.B. was then evaluated to determine whether J.B. could travel via air ambulance to Colorado. One doctor from OHSU's neurosurgery group noted that J.B. was alert, could wave, was able to follow instructions, and could verbalize a few words. (DSF ¶ 19.) A physician's assistant documented the need for J.B. to wear a helmet because the skull flaps removed during the craniectomy had not yet been restored. (PSF ¶ 20.) A trauma surgeon approved J.B. for transport via air ambulance. (*Id.* ¶ 21.) Dr. Brasel approved J.B.'s discharge for July 18. (*Id.* ¶ 22.)

J.B. was covered by the Plan at all times, and Cigna acts as the plan's administrator. (PSF ¶ 17.) Before J.B. was transported to Craig Hospital, J.B.'s mother—acting as her child's

representative—signed a form assigning to Plaintiff J.B.'s rights under the Plan. (*Id.* ¶ 26.) On the morning of July 18, Plaintiff faxed Cigna a request for prior authorization for the non-emergency air ambulance, which Dr. Nicole Saint Clair of Cigna denied later that afternoon. (DSF ¶ 25–26.) A ground ambulance nevertheless transported J.B. from the hospital at 8:50 a.m. that morning, and J.B.'s flight left Portland at 10:02 a.m. (*Id.* ¶ 25.) Plaintiff sent a claim to Cigna on July 20 for a total of $358,125. (*Id.* ¶ 27.) Cigna denied reimbursement in early August, stating that the service was not "medically necessary." (*Id.* ¶ 28.)

> The Plan defines "medically necessary" as:
>
> Health care services, supplies and medications provided for the purpose of preventing, evaluating, diagnosing or treating a Sickness, Injury, condition, disease or its symptom, that are all of the following as determined by a Medical Director or Review Organization:
>
> - required to diagnose or treat an illness, Injury, disease or its symptoms;
> - in accordance with generally accepted standards of medical practice;
> - clinically appropriate in terms of type, frequency, extent, site and duration;
> - not primarily for the convenience of the patient, Physician or other health care provider;
> - not more costly than an alternative service(s), medication(s) or supply(ies) that is at least as likely to produce equivalent therapeutic or diagnostic results with the same safety profile as to the prevention, evaluation, diagnosis or treatment of your Sickness, Injury, condition, disease or its symptoms; and
> - rendered in the least intensive setting that is appropriate for the delivery of the services, supplies or medications. Where applicable, the Medical Director or Review Organization may compare the cost-effectiveness of alternative services, supplies, medications or settings when determining least intensive setting.

(Administrative Record (hereinafter "AR") at 68.) The plan elsewhere notes that no payments will be made for expenses "that are not Medically Necessary." (*Id.* at 46.) The notice to Plaintiff denying the air transport service claim did not say specifically why that service was deemed not medically necessary. (*See id.* at 79.)

Plaintiff filed an internal appeal with Cigna, arguing that the service satisfied the plan's definition of medical necessity. (DSF ¶ 29.) In addition, Plaintiff included a letter from Dr. Brasel in which she explained why she believed that Craig Hospital and that explained why she thought

3

Craig Hospital was the "closest, most appropriate" facility for treatment of J.B.'s need for rehabilitation. (*Id.*; PSF ¶ 12.) Cigna's medical director, Dr. Gregory Lizer, reviewed the appeal and affirmed the denial on September 27, reasoning that the air ambulance was not covered because Plaintiff had not received prior authorization, the transportation was not medically necessary, and Craig Hospital was not the "closest facility" where J.B. could be treated as needed. (DSF ¶ 31–33.) The Plan requires that a "Participating Provider" receive prior authorization for "non-emergency ambulance services" and provides further that covered expenses are limited to "charges for licensed ambulance service to or from the *nearest Hospital* where the needed medical care and treatment can be provided." (AR at 27, 28 (emphasis added).) Notably, Aviation West is not a participating provider. (PSF ¶ 25.) Dr. Lizer 's letter did not explain why Craig Hospital was not the nearest one where J.B. could receive the needed treatment, nor identify an alternative treatment facility. (*See id.* at 300–02).

Exercising its rights under the Plan (*see id.* at 57), Plaintiff requested external review by an independent review organization ("IRO"). (DSF ¶ 34; PSF ¶ 32.) Included with the request was an independent medical review from Dr. Tova Alladice, who believed that the air ambulance was the only safe mode of transportation for J.B. at the time. (DSF ¶ 34.) Dr. Alladice—who is not affiliated with either OHSU or Craig Hospital—based that conclusion on her review of J.B.'s medical records, medical literature, and Plaintiff's internal appeal. (AR at 312.) AllMed (the IRO) nevertheless upheld Cigna's denial of benefits on the grounds that the air ambulance was not the most cost-effective method of non-emergency transport because J.B. could have been transferred by medical van. (*Id.* ¶ 37–38; PSF ¶ 33.) Notably, AllMed's assessment assumed that J.B. had undergone a craniotomy (PSF ¶ 33), that is, a procedure where the skull flap is surgically removed and replaced—rather than a craniectomy, in which the bone is not replaced, *see Craniotomy*, MAYFIELD BRAIN & SPINE CLINIC (Sept. 2018), http://mayfieldclinic.com/pe-craniotomy.htm (last visited Nov. 21, 2019).

4

Aviation West brings this case under ERISA and seeks to recover "benefits due" under the terms of the Plan, *see* 29 U.S.C. § 1132(a)(1)(B), as well as attorney's fees, § 1132(g)(1), and prejudgment interest, § 1132(a)(3). Both parties have moved for summary judgment.

## **DISCUSSION**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When, as in this case, an ERISA plan administrator is given discretion to the interpret the terms of a plan, the court asks only whether the decision to deny benefits was arbitrary and capricious. *Rabinak v. United Bhd. of Carpenters Pension Fund*, 832 F.3d 750, 754 (7th Cir. 2016). Under this standard, questions of judgment are left for the administrator to decide. *Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 701 (7th Cir. 2005). The arbitrary and capricious standard is, thus, "the least demanding form of judicial review of administrative action," *Trombetta v. Cragin Fed. Bank for Sav. Emp. Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996), but the court's inquiry is not a "rubber stamp," *Holmstrom v. Metro Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2003). The court will "uphold the plan's decision so long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Sisto*, 429 F.3d at 700. The plan administrator's decision will not be upheld "when there is an absence of reasoning in the record to support it." *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774–75 (7th Cir. 2003).

Defendants argue that Plaintiff is not entitled to any benefits because J.B.'s transportation to Craig Hospital was not pre-authorized and the air ambulance was not medically necessary as required for reimbursement under the Plan. Plaintiff contends that Cigna's denial of benefits was arbitrary and capricious because Cigna has not shown that a closer facility would be at least as likely to provide equivalent care, violated ERISA by failing to provide Plaintiff with a "full and fair

5

review," *Hackett*, 315 F.3d at 775 (quoting *Halpin v. W.W. Grainger*, 962 F.2d 685, 688–89 (7th Cir. 1992)), and ignored or cherry-picked record evidence in reaching its decision.

**The Plan did not Require Pre-Authorization**

Both parties point to the same Plan language in arguing whether the Plan required Aviation West to receive pre-approval from Cigna for J.B.'s transportation to Craig Hospital:

> The term Prior Authorization means the approval that a Participating Provider must receive from the Review Organization, prior to services being rendered, in order for certain services and benefits to be covered under this policy.
>
> Services that require prior authorization include, but are not limited to:
> . . .
> - non-emergency ambulance.

(AR at 27–28.) Defendants assert that this language forecloses Aviation West's ability to receive any benefits under the Plan because J.B. was not (as Plaintiff acknowledges) in need of emergency transportation and because Plaintiff did not receive pre-authorization from Cigna to transport J.B. by air ambulance to Craig Hospital. As Plaintiff points out, however, this provision refers to prior authorization as the pre-approval that must be sought by a *participating provider*. And Aviation West, as both parties acknowledge, is *not* a participating provider.

Other language in the Plan that Defendants cite does not bolster their position. For instance, the Plan says that "[c]ertain services require prior authorization in order to be covered. . . . You or your authorized representative (typically, your health care professional) must request prior authorization according to the procedures described below . . . ." (*Id.* at 55.) But as already noted, "prior authorization" is defined to refer only to the pre-approval sought by participating providers. No other language in the Plan requires a non-participating provider, such as Aviation West, to receive pre-approval before rendering ambulance services.

This case is therefore distinguishable from *Springer v. Cleveland Clinic Employer Health Plan Total Care*, 900 F.3d 284 (6th Cir. 2018), on which Defendants rely to argue that prior authorization was required. In that case, the Sixth Circuit upheld a denial of benefits because the

6

claimant had not sought pre-approval for a non-emergency air ambulance. *Id.* at 289. The plan language at issue in that case, however, "unambiguously require[d] precertification as a condition of coverage," *id.*, unlike the Plan at issue here, which by its terms required prior authorization for non-emergency ambulances only from participating providers. The other cases that Defendants cite in a footnote are similarly inapposite because the insurance plans at issue in those cases did not appear to limit the prior authorization to requirement to participating providers. *See Brian N. v. Coventry Healthcare of Neb., Inc.*, No. 2:17-cv-1128, 2019 WL 2515783, at *4–6 (D. Utah July 9, 2019); *Dailey v. Blue Cross & Blue Shield of Kan. City*, No. 17-cv-01036, 2019 WL 539119, at *4–5 (W.D. Mo. Feb. 11, 2019); *Martin v. Anthem Blue Cross Blue Shield of Ga.*, No. 1:16-cv-843, 2017 WL 4456904, at *5 (N.D. Ga. July 31, 2017); *Goldman v. BCBSM Found.*, No. 11-cv-14043, 2012 WL 4513657, at *2–3 (E.D. Mich. Oct. 2, 2012).

Defendants insist that the Plan's language should be read as requiring non-participating providers also to receive prior authorization for services because, according to Defendants, the Plan's structure "steers" members to in-network providers. Plaintiff disputes this. The Plan does provide that it will "pay[] a greater share of the costs" for services rendered by a Participating Provider "than if you select a non-Participating Provider." (AR at 7.) Further, the Plan includes a "maximum reimbursable charge" provision that limits reimbursement for out-of-network services. These provisions mean that the use of an out-of-network provider may increase a claimant's out-of-pocket expenses. (*Id.* at 15.) On the other hand, however, the Plan pays "100% after plan deductible" for both in-network and out-of-network ambulance services, unlike a number of other services for which the Plan pays a lower percentage to out-of-network providers. (*Id.* at 19.)

Even if these provisions are properly understood to encourage reliance on participating providers, the court is guided here by the explicit Plan language. By its terms, the Plan does not require a non-participating provider to receive prior authorization for non-emergency ambulance services. Defendants or the Plan Administrator may have intended claimants to receive pre-approval before using an out-of-network provider or hoped that the plan's structure would

encourage them to do so.[1]  But the plain language of the Plan does not require it.  The court acknowledges that "the administrator's use of interpretive tools to disambiguate language . . . is entitled to deferential considerations," *Marrs v. Motorola, Inc.*, 577 F.3d 783, 786 (7th Cir. 2009) (emphasis omitted), but in interpreting a Plan, the Administrator may not "rewrite or modify" its provisions.  *Frye v. Thompson Steels Co., Inc.*, 657 F.3d 488, 493 (7th Cir. 2011); *see also id.* ("[T]he fiduciary must reach an interpretation compatible with the language and the structure of the plan document.").  Defendants' interpretation contradicts the Plan's express language; to interpret the Plan as Defendants suggest is to rewrite it.

Defendants point out that Plaintiff had faxed Cigna a prior authorization request on the morning of J.B.'s transport to Craig Hospital, suggesting that Plaintiff itself recognized the need for prior authorization for the services.  (AR at 376–80.)  As the Seventh Circuit has recognized, "[h]ow the parties to a contract actually perform their contractual undertakings is often . . . persuasive evidence of what the parties understood the contract to require." *Zielinski v. Pabst Brewing Co.*, 463 F.3d 615, 618 (7th Cir. 2006).  Plaintiff argues that the request for preauthorization in this case "merely reflected a desire to obtain an early agreement that the transportation was covered, thus avoiding litigation."  (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. [32] at 4.)  In any case, this single request does not constitute "persuasive evidence"

---

[1] Defendants urge that finding that the prior authorization requirement does not apply to non-participating providers would frustrate the Plan's purposes, but the court is less certain. Requiring prior authorization is one way for the Plan Administrator to lower costs, as is paying a lower percentage of a patient's expenses for certain services.  It appears that for at least a number of services, Defendants have simply adopted the former cost-control method for participating providers and the latter method for out-of-network providers.  This interpretation is underscored by another portion of the Plan providing that if a member is "unable to locate an In-Network provider in [his or her] area who can provide . . . a service or supply that is covered" and "obtain[s] authorization" to use an out-of-network provider, then the "benefits for those services will be covered at the In-Network benefit level." (*Id.* at 13.)  The fact that pre-approval is called for, to permit payment of the higher, in-network rate to out-of-network providers in some circumstances, may mean that prior authorization is not a cost-control measure that applies in general to out-of-network providers.

8

that Plaintiff understood it would not be reimbursed for medically necessary services, absent prior authorization. The court turns, then, to the issue of medical necessity.

**Defendants Have Not Adequately Addressed the Issue of Medical Necessity**

Defendants are on somewhat firmer ground in arguing that the transport services at issue in this case are not reimbursable unless they were medically necessary. The Plan defines "covered expenses" as follows:

> The term Covered Expenses means the expenses incurred by or on behalf of a person for the charges listed below if they are incurred after he becomes insured for these benefits. Expenses incurred for such charges are considered Covered Expenses to the extent that the services or supplies provided are recommended by a Physician, and are Medically Necessary for the care and treatment of an Injury or a Sickness, as determined by Cigna. . . .

> **Covered Expenses**
> . . .
> - charges for licensed ambulance service to or from *the nearest Hospital where the needed medical care and treatment can be provided*.

(AR at 28 (emphasis added).)

And as previously noted, "Medically Necessary" under the Plan means:

> Health care services, supplies and medications provided for the purpose of preventing, evaluating, diagnosing or treating a Sickness, Injury, condition, disease or its symptom, that are all of the following as determined by a Medical Director or Review Organization:
>
> - *required to diagnose or treat an illness, Injury, disease or its symptoms*;
>   . . .
> - *not more costly than an alternative service(s), medication(s) or supply(ies) that is at least as likely to produce equivalent therapeutic or diagnostic results* . . .

(*Id.* at 68 (emphasis added).)

Cigna initially denied the claim related to J.B.'s air ambulance to Craig Hospital on the grounds that the service was not medically necessary, (*id.* at 79), and then affirmed that determination after an internal appeal to the Cigna medical director, Dr. Lizer. (*See id.* at 300–02.) Dr. Lizer reasoned that the air ambulance service required prior authorization and that the service was not medically necessary because Craig Hospital was "not [ ] the closest facility that could provide the medically necessary care and treatment." (*Id.* at 300–01.) AllMed, the IRO,

9

reached the same conclusion following an external review. (*Id.* at 553–55.) Defendants argue that these decisions were not arbitrary and capricious because the record did not establish that Craig Hospital was the nearest appropriate facility. Plaintiff, however, asserts that Cigna did not provide the "full and fair review" required by ERISA because the Plan Administrator failed to advance the closer-facility argument until after J.B.'s internal appeals rights were exhausted. 29 U.S.C. § 1133(2). Plaintiff also contends that the denial of benefits was arbitrary and capricious because the record establishes that Craig Hospital was the nearest facility where J.B. could receive the treatment J.B. needed, and neither Cigna nor Defendants have ever identified a closer appropriate hospital.

"Because a finding that Defendants failed to comply with § 1133 may preclude a substantive review of its denial of benefits," the court will begin with whether the Plan Administrator complied with its procedural obligations. *Jacobs, Jr. v. Guardian Life Ins. Co. of Am.*, 730 F. Supp. 2d 830, 845 (N.D. Ill. 2010). ERISA requires that a plan administrator "(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. And ERISA regulations specify what content must be provided in any "adverse benefit determination," including "[t]he specific reason or reasons for the adverse determination" and "[a] description of any additional material or information necessary for the claimant to perfect the claim and explanation of why such material or information is necessary." 29 C.F.R. § 2560.503-1(g)(1). Although only "substantial compliance" with these requirements is necessary, the beneficiary must have been "provided with a statement of reasons that allows a clear and precise understanding of the grounds for the administrator's position sufficient to permit effective review." *Hackett*, 315 F.3d at 775. Still, while the plan administrator must give "specific reasons" for a denial, "that is not the

same thing as the reasoning behind the reasons." *Gallo v. Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996).

The court finds that Defendants substantially complied with ERISA's requirements in this case. True, Cigna's denial of J.B.'s request for prior authorization and its initial denial of the claim did not specify *why* it believed the air ambulance service was not medically necessary. (*See* AR at 79, 164–65.) But Dr. Lizer made clear on appeal that the claim was being denied because Craig Hospital was not the closest facility. (*Id.* at 300–01.) What mattered in *Gallo*, 102 F.3d at 923, was that the claimant be given "sufficient explanation to enable [him] to formulate his further his challenge to the denial, the challenge that he has mounted in this suit, [ ] as that is the purpose of requiring a statement of the plan administrator's reason denying the benefits sought." In this case, Plaintiff's internal appeal included a letter from Dr. Brasel stating that Craig Hospital was "the closest, most appropriate facility for [J.B.]" (AR at 292), suggesting that it had sufficient notice of the reason for the benefit denial. Plaintiff also had an opportunity to present more evidence in its request for an independent review—and did so, in the form of Dr. Alladice's independent medical review. (*Id.* at 551–52.) Ultimately, Cigna substantially complied with § 1133 because Cigna was clear enough to "permit effective review" by this court. *Hackett*, 315 F.3d at 775.

Still, the fact that Cigna complied with ERISA's procedural requirements does not mean that its review was not substantively flawed. As stated above, under arbitrary-and-capricious review, a plan administrator's decision will not be upheld "when there is an absence of reasoning in the record to support it." *Hackett*, 315 F.3d at 774–75. The court agrees with Plaintiff that there was an absence of reasoning in the record to support the denial of benefits in this case.

The record presented to the Plan Administrator on internal appeal included Dr. Brasel's letter. (*See* AR at 292–93.) In that letter, Dr. Brasel wrote that "[a]ir ambulance was medically necessary for [J.B.] at the time of transport as [J.B.] did not meet criteria for commercial air travel due to [J.B.'s] neurological deficits." (*Id.* at 293.) "It was critical," she noted, "for [J.B.] to begin an intensive rehabilitation program in order to gain as much function as possible and to prevent

11

complications associated with traumatic brain injury. . . . Scientific reviews indicate a higher level of therapy is associated with better functional outcomes." (*Id.* at 292.) Dr. Brasel described Craig Hospital as providing the highest level of care: "Patients at Craig Hospital make greater functional gains during their initial treatment, are discharged home at higher rates, are more functionally independent, have fewer hospitalizations, and have higher levels of community reintegration and satisfaction with life." (*Id.* at 293.) For Dr. Brasel, this meant that "the closest, most appropriate facility for [J.B.] was Craig Hospital." (*Id.* at 292.) Importantly, there is no other part of the record that identifies another appropriate facility or another hospital closer than Craig Hospital.

Defendants are correct that Cigna was not obligated to accept Dr. Brasel's conclusions. *See Black & Decker*, 538 U.S. 822, 834 (2003) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician."). Cigna was entitled to base its decision on the opinions of its own doctors. The Plan Administrator was not, however, entitled to "simply ignore [J.B.'s doctor's] medical conclusions or dismiss those conclusions *without explanation*." *Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 398 (7th Cir. 2009) (emphasis added). Dr. Brasel's letter concluded that Craig Hospital was the closest appropriate facility for J.B. But in denying the claim, Cigna impermissibly failed to "address [this] reliable, contrary evidence" when concluding that Craig Hospital was not the nearest appropriate one. *Id.* at 397. If Cigna thought that Dr. Brasel's opinion was too conclusory, as Defendants contend, it was obligated to say so and to explain why that was the case: "[T]he administrator must weigh the evidence for and against [the denial or termination of benefits], and within reasonable limits, *the reasons for rejecting evidence must be articulated if there is to be meaningful appellate review*." *Gallo*, 315 F.3d at 775 (alteration in original) (emphasis added) (quoting *Halpin*, 962 F.2d at 695). Simply put, meaningful judicial review is not possible unless the Plan Administrator articulates why Craig Hospital was not "the closest, most appropriate facility" for J.B.

Defendants urge that Plaintiff's submissions, such as Dr. Brasel's letter, are so lacking in evidentiary support that Cigna's decision was reasonable. The cases they rely on are distinguishable, however. For example, in *Gernes v. Health & Welfare Plan of Metro. Cabinet*, 841 F. Supp. 2d 502, 506–07 (D. Mass. 2012), the plan administrator denied a claim for a non-emergency air ambulance from Paris to Boston because it determined that the service was not medically necessary. *Id.* at 506–07. But two internal reviewers had noted when denying the claim that the treatment to be provided in Boston was available at the Paris hospital and elsewhere in Europe. *Id.* at 507. As the *Gernes* court said, "[t]he administrative record contains sufficient evidence that adequate medical care was available to Gernes in France." *Id.* at 511. Here, in contrast, there is no evidence showing that any hospital other than Craig Hospital could have provided J.B. with sufficient medical care. Moreover, unlike in this case, the plan administrator in *Gernes*, 841 F. Supp. 2d at 511, made some effort to investigate whether the patient could be treated at a closer hospital. Defendants' reliance on *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174 (7th Cir. 1994), is similarly misplaced. In that case, the plaintiff's claim for disability benefits was denied after her primary treating physician declined to certify that she was actually disabled. *Id.* at 179. This stands in sharp contrast to Dr. Brasel's determination that J.B.'s air ambulance transportation was medically necessary and that Craig Hospital was the closest appropriate facility for his treatment.

Because of the absence of evidence in the record supporting the Plan Administrator's decision, the court finds that the denial of benefits was arbitrary and capricious.

## **CONCLUSION**

For the foregoing reasons, the court grants Plaintiff's cross-motion for summary judgment [23] and denies Defendants' motion [19] without prejudice. "The most common remedy when an ERISA plan administrator's benefits decision is deemed arbitrary is to remand the matter for a fresh administrative decision." *Lacko v. United of Omaha Life Ins. Co.*, 926 F.3d 432, 447 (7th

13

Cir. 2019). Accordingly, the court remands this claim to the Plan Administrator. Civil case terminated.

ENTER:

Date: November 26, 2019

_____
REBECCA R. PALLMEYER
United States District Judge